1620, Automed Technology v. Microfil, Ms. Barnard. Good morning, Your Honors. May it please the Court. My name is Sharon Barnard, and I represent the Plaintiff Appellant, Automed Technologies. I would like to reserve five minutes for a vote. In this case, in granting Defendant Microfil's motion for summary judgment of non-infringement, the District Court committed some fundamental errors in its claim construction of key terms and in its application of those accused products to the construed claims. The two patents at issue here, which I will refer to as the 927 patent and the 671 patent, claim systems and methods for automatically dispensing oral prescription medication, such as pills. Essentially, the medication is moved from a container down a path to a dispensing location, and once there, to facilitate the dispensing process, vibration is used to move the pill out of the container and into a vial. There are two terms that the District Court construed which Automed has raised in its appeal, the term controller and the term vibratory dispenser. The District Court decided non-infringement solely on the basis of the absence of controller limitation in the claims, in the accused products. The Court did not reach any other limitation or element of the claims. The District Court construed controller as a single control system that regulates the entire pill dispensing process. The District Court then based its ruling of non-infringement upon the notion that the defendants' accused products did not contain such a single controller system that regulated the entire prescription process. As far as the specification of these two patents, those specifications are, let me say, not the clearest documents that I've read in a while. And with respect to the controller, there is some discussion, for example, at the top of Column 8 in the 927 patent of Controller 180, which refers to some block of structure illustrated in Figure 1B. There isn't anything very specific that is either illustrated or described. And then later on, Column 80, toward the bottom, talks about Control System 80, making reference to, I guess, some of the flowcharts for the software in Figure 8. Was the description of Control System 80 intended to refer to the same Controller 180, or are they two separate things? I believe, Your Honor, that they were two separate things. I think that the District Court confused Controller 180 with Control System 80. I believe it's meant to include a number of – could include a number of distributed modules controlled by one control system. Well, if you look at page 823 in the record, which is a figure in the 927 patent, page 23, there is an 80 there, so 70-80. Is that 80? See the 8080? Yes, sir. Is that Control System 80? Yes, sir. But that's different from Controller 180. Yes, sir, it is. So is Controller 180 at all a part of Control System 80? Is one a part of the other, or are they two independent systems? I believe that they can be two independent systems, Your Honor. The specification talks about Controller 180 at one point. Let me find it specifically. One point talks about the top of column 8, Controller 180 controls the vibration of the drive unit. And column 4, line 17, 18, talks about the Controller 180 controlling the positioning of the robotic assembly 140. So the Controller 180, I take it, is something that controls a number of different things. That's correct, Your Honor. So Controller 180 may have various control structures, control components, with some overriding software or some such thing, that Controller 180 isn't a discrete thing, it's a system, right? What I think 180 is meant to refer to is that you can have different controller modules, and those can be controlled by an entire master control program or system. So you can have them act independently, or you can have them act under an entire control system together. Well, then going back to Control System 80, how is that—that has no relationship to Controller 180? In many ways it does, Your Honor, because under the control system, it would be controlling a Controller 180. So if you had a master software program, which was a control system, it would issue control language to the individual controllers that controlled the modules. Well, column 11 of the 671 patent, on page 79 of the record, talks about the Control System 80 and the various processes employed by the system. Under the control of Control System 80 are now described. Isn't that a description of a number of the things that 80 is responsible for? So it leads directly to what line you're talking about in column 11 again? It's in column 11 of the 671 patent, starting at line 43. I just thought that was a description of what Control System 80— or at least a partial description of what it does. Yes, Your Honor, but I don't think that that's inconsistent with what I said about how 80 controls 180. That's correct. But there's nothing in that description of Control System 80 that discusses Controller 180. No, there's nothing specific in that description in and of itself, but I think what is implied by at least that small provision right there is that you can have a control system that controls the individual controllers that control the various models that are involved in this process. You'll have to agree with me that it's a little bit of a mystery. What was the trial court's interpretation of controller? Of this? Yes, didn't the trial court say there has to be a single, just one piece of structure that does everything? That does everything, that's correct. And what the problem with that is is that it rules out the ability to have separate individual control modules controlled by a master control program. It says that a single— But in terms of what the patent claims, the patent doesn't claim a control system, right? It does not. There's no language in the claims that refers to a control system. No, the language says a controller comprising. It says where? I'm sorry, the language says— Controller operatively controlling the vibratory dispenser, isn't that correct? Correct. And that's the only reference to controller. That's correct, Your Honor. Now, does the controller include hardware and software? I believe that the controller includes hardware and software. That's sort of the impression that I got from reading the patent, that the controller is— I didn't read anything in the patent specification that limits the controller to any specific structure or component or any single component or single piece of structure. It just seemed to me there were broad descriptions throughout of controllers controlling certain functions. That's correct, Your Honor. And you continue to mount your argument, I assume, that there are numerous claims in the asserted— numerous asserted claims that don't have the controller limitation in them at all. That's correct, Your Honor. And so you're saying how can you have— how can the district court hold against you on those claims on the controller limitation when it's not in the claim itself? Absolutely. And having based the entire decision of non-infringement on claims that don't even have a controller limitation, I believe that that was a fundamental error by the judge. Well, your argument would be at the very least you're entitled to further proceedings on the claims that don't include the word controller. Yes, Your Honor. I believe that as to those claims that do not include the word controller, there was no argument by the defendants that those claims did not weed on the accused systems. And from that perspective, this court should be able to enter a judgment of infringement as to those claims and those accused systems. As to the claims which did include the controller limitation, the district court erred in its conclusion that it required a single structure that controlled all of the modules as opposed to excluding a control system in which the control function is distributed over one or more interconnected processors governed by a master control process. The district court acknowledged that the claim language itself did not have a limitation of a single controller, but then impermissibly imported into the claim language this single controller limitation. I believe that this issue was recognized by the defendants, and in their brief on appeal, they went to two new and additional arguments as to why the controller is absent from the accused products. What the defendants essentially have argued is that the auto-med disclaimed the ordinary meaning of the word controller, which permitted to control one or more devices. And clearly, in order to have a disclaimer, there must be, under this court's rulings, a clear and manifest repudiation of the ordinary meaning of the term controller. That also means there must be an ordinary meaning of the term controller, which both the district court and the defendants failed to acknowledge, and that is a system in which the controller controls one or more systems. The other argument that the defendant raised was that it was a means plus function claim, which it never raised in the court below as it did not raise the other issue of disclaimer. Of course, these claims lack any indication that they are a means claim, and that raises a presumption that they are not means claims. But in looking at it, I believe that you will find that there is structure for performing the function. The term controller refers to a definite structure, a combination of hardware and software. As to the vibratory dispenser issue in claim construction, although the court did not decide non-infringement on this issue, the construction of that claim term, that it requires the use of vibration in order to dispense medication and not a device that merely assists in the dispensing, or a device that dispenses a product using vibration. If you look at the district court's October 26 opinion at 821 at 19, it states both of those definitions. And per se, there's nothing wrong with that definition, but it was clear based on the court's opinion that it was going to go on and hold that the dispenser had to use vibration and vibration alone and could not use any other motive force, such as gravity, to dispense the pill medication. That interpretation by the court is incorrect and unsupported by either the claim language or the specification. The defendants did assert in their summary judgment motion, their motion for summary judgment of non-infringement, both the absence of a controller and the absence of the vibratory dispenser, correct? Only as to certain claims on the controller. They never asserted that the controller limitation existed in the 671 claims where it doesn't exist as a limitation. I understand. But with respect to the vibratory dispenser, that applies to all of the claims. It does apply to all of the claims, but they did not contest that the vibratory dispenser existed in two of the accused systems. They did contest that it existed in the third accused system, the auger system. And what evidence did you rely on? You have the Bergeron deposition, the declaration of Mark Spong. Is there anything else? In terms of the fact that the auger system engaged in vibration? Correct. Yes, Your Honor. There was the— I see in the claim chart there was exhibit I. Is exhibit I the Bergeron deposition? Yes, Your Honor. And exhibit L is the Mark Spong declaration? That's correct, Your Honor. So those are the two pieces of evidence that you relied on in opposing the vibratory dispenser issue. That's correct, Your Honor. Okay. Thank you. You've used all of your rebuttal, but we'll give it back to you. Mr. Rath, if you could give me extra time, you may have it. Thank you, Your Honor. Good morning. May it please the Court. I'm Eugene Rath from Price, Hinderbilt, Cooper, DeWitt, and Littner Grand Rapids, and I represent the Appleese in this case. There are two main issues in this case, and I will start with the patent side of this case, and specifically the controller issue, which you were just discussing with other men's counsel. You are correct, Your Honor, that the specification is not a model of clarity on this issue, but the patents do make clear what the construction of controller must be, and it must be limited to a single controller that regulates the entire system. Can we just dispose of the claims of the 621—671 that don't have a controller limitation? No, I don't think we can, Your Honor. I didn't understand your brief to address that issue. I'm not sure it does— Don't you have to concede error there? No, I don't think we do, and the reason is because the— How can you find non-infringement over something where there's no limitation? Because the invention is an automated pill dispensing system, and for it to be automated, it has to have a controller. Otherwise, they have claimed something which is not their invention, and the claims that do not contain a controller are therefore invalid under Section 112. Well, that's a different problem than the infringement problem. I don't believe the district court sustained invalidity. Invalidity was raised, wasn't it? What's that, Your Honor? You raised invalidity challenges. We did. You lost. That's correct, Your Honor. But I believe that the patent requires that there be a controller in this— Why didn't you say that in your brief? I don't know. You waived the argument, didn't you? I don't believe so. And the other side comes in and says you can't possibly tax me with non-infringement on a controller. There's no controller limitation in those claims. They say at least we went on that, and you don't even respond in your brief. But I believe under the construction canons it still has to be— You raised invalidity and you lost. You may be right that the claims are not valid. You're correct on the invalidity, but under the construction canons, I believe that the controller has to be present in the claims. Why? Because the patents say that this is an automated system, and it talks about the apparatus of the invention includes numerous components that are integrated into a singular process, which is controlled by a controller. Well, the patentee is not obligated to claim every aspect of an invention in every claim, right? That's— They can claim a subsystem or a portion of an invention if that subsystem or portion is considered to represent a patentable invention in and of itself. That's correct, Your Honor. However, they have stated in their field of the invention and in their background with a distinguished prior order that this is all about an automated system and therefore does not require user intervention, and it's all about this automation aspect that is the heart and is their invention, and therefore it requires a controller. Do you have any case that suggests that in that circumstance you read a limitation into the claim? I don't believe it's reading a limitation into the claim, but there are a couple of cases— I don't know how you can characterize it as anything other than that. It's claiming what their invention is, and it's similar to the Alloc case. I don't know if I pronounced that correctly, but it's 342 F 1361. Well, did you brief the district court along the lines you're now talking to us? I'm just a little concerned because the other side's been blindsided, at least on the appeal, because they're now hearing what your argument is to try to save the claims that don't have controller written into them. Did you brief the district court? No, Your Honor, we did not. No, the answer to that is no, we did not. So as far as the district court was concerned, it was going to read controller into all those other claims, right? The district court did read those claims, at least by implication, by reading through the orders that they did include controller, correct, Your Honor? And the means plus function argument you're making now on controller, you did not make that below? Correct. I also wanted to address the issue of this controller versus control system language that's used in the specification. Upon a reading of the patents, they have to be the same thing. If you look at the claims of the patents, starting with Claim 1 of the 927 patent, that claim requires that the controller perform four different functions, one of them being that the controller In the claim we're talking about, in the claim, right? Yes, Claim 1 of the 927 patent, Your Honor. And where do we see the controller? The controller shows up in four different spots in that particular claim. And it is required that the controller receive the patient-specific prescription information, controls the vibratory dispenser, it controls the at-least-one-container transport assembly, and it operatively controls the vial transport assembly. Now, if you look back to the specification, it talks about, in terms of the control system, receiving the patient-specific prescription information. In particular, looking at the 927 patent at Column 10, starting about Line 12, it says that the control system receives the patient-specific prescription information. It states that the patient orders, I'm sorry, are received by the control system. This is the same thing as receiving the patient-specific prescription information of Claim 1 of the 927 patent. What about controller in the 671 patent? 671 patent talks about it in terms of controlling the vibratory dispenser. Only? In the claims, correct. But if you look at the claims of the 927 patent, it's clear that the patentee was using controller and control system interchangeably here. Therefore, they have to be the same thing. There has to be this one overall control system or controller, as they've used the term in the claims, that controls and regulates the overall system of their invention. Does a controller include both hardware and software? Yes, it does, Your Honor. And what in the specifications of either patent would suggest that the hardware consists of one structure as opposed to a multiplicity of structures or modules? Again, there's only reference to a single controller throughout the specification. But presumably, the controller, if it's controlling various functions and various functions performed by different pieces of machinery within the overall apparatus, will have different component parts. One component will move the gripper, and one component will sort this, that, or the other. And all of these various component parts operating in accordance with some scheme set forth in the overriding software. That's correct, and that's the way the microfilm system works, but that's not what these patents in suit are about. They're about one overall control system. How many control systems does the accused product have? It has six controllers. Systems. How many control systems? Only one. It doesn't have really an overall system per se. It has a computer that uses the input information and directs it to the correct microprocessor for the modules. Sort of like in Claim 1 of the 927. Not a controller that's doing different pieces of structure, doing different things along the production line. But it's not a single controller in the accused products. It's six different controllers. We have six different microprocessors, and the reason for that is the accused products are modular, and they constitute the system. You can look at it that way, but it's a modular, under the correct construction of controllers. Somebody walked up and said, what's your system for controlling this thing? You'd say, well, it's these individual parts. And we have six separate controllers that make up the system. But they have to have some overriding control, otherwise it'd be chaos. You can't have individual controllers going off and doing different things at different times, regardless of what other controllers are doing. Well, there is something, and that's a computer, that regulates the information and where it's sent. So in that essence, we do have a control system to regulate the information and how it's used and to what controller it's sent to. Why isn't that exactly what Claim 1 says? Because we have microprocessors, which are the controllers, which are controlling the mechanisms, the modules, of the accused products. Well, I hear you. You're trying to parse this out, but I just don't understand why or what the basis is for your contention. It seems to me that it's just a lot of words, that you have to have some overriding control system, and I think you've essentially agreed that there is some overriding control of the various modules. And even if the modules themselves have some mechanism and have some microprocessors, why are they not just components of the overall system? They are components of the overall system, but as the term controller is used in these patents, we have six controllers, and that's what I'm telling you. These microprocessors, these six microprocessors, are what control the functions of the various modules, whether it's filling the vial or labeling the vial. Well, in Claim 1 of the 927, you have a controller whose first task is to receive patient-specific prescription information, right? Correct. And you have something in your system that does the same thing, because otherwise you can't fill the prescription if you don't know what it is. Correct, and we have a computer where the input information is gathered. Right. That's right. And then you have a next step, right, that's somehow controlled. Where the information is... Tells how many pills to come down or come out of the canister. Correct. Which canister to bring over, right? Correct. The signal is sent to the correct microprocessor in the overall system. From your overall control system. From the overall system, correct. And then the microprocessor controls that particular module and its function of what it does, what canister it goes to get or... What do you suppose commands these four controllers in claim one? It's a host computer. Somebody runs down and pushes the button? It's a microprocessor of some sort, isn't it? It's a host computer 70 that's in the package that's referred to. And that's where the information is received and then goes to their controller-slash-control system, which is different than ours. Regarding the vibratory dispenser, I would just like to state briefly that vibration is the key component to the patented invention. And the patentee has stated expressly in the patents that in operation the canister is vibrated by the drive unit  This back also talks about gravity. Well, it's possible that gravity is used, however... But you're reading the claim to say that the only possible means for moving this stuff has to be vibration. I'm saying that vibration has to be present to move the pills. Well, there is vibration. You've conceded that there's vibration present in the accused devices. You just say there's also gravity. In one of the accused devices, correct. In the auger, there is no vibration in the auger system, which is the second-generation microfill system. For AutoMed's counsel to get up here and say that there's vibration in that system is simply ludicrous. It uses an auger, and it tilts the auger, but there's no vibration. There's no vibratory force that causes the pills to move or be dispensed. It's simply that motive force of the auger coupled with gravity. Well, isn't that a fact issue? The trial judge didn't rule on that? No, there's no dispute over that. There's no dispute that the auger... I thought you said your adversary just stood up here and said, au contraire. They are saying that there is gravity. However, if you look at the facts of the case and the testimony... Well, it's an officer of the court. My point is that the trial judge didn't rule on this limitation, and both of you are asking us to step into the shoes of a trial judge and to rule in your favor on it. It's a summary judgment here, right? Correct. And so it would seem to me that if there's any factual question as to whether or not the auger uses something other than vibration, why wouldn't you let a fact finder decide that? I don't think it is a legitimate material disputed fact. It's an auger system, and there's no vibration. I see my time is up. Thank you, Your Honor. Ms. Barter? Your Honor, I just need a couple minutes here. In reference to the method claims of the 671 patent, which do not have a controller limitation, I just want to point out that those are indeed method claims and lack that controller limitation. Method and system claims and lack that controller limitation, and it should not be read back into those claims. Secondly, as to the auger system and the vibration issue, our expert testified, as well as the references that we refer to, that the tilting motion of the auger is vibration. And even though the district court did not rule on that issue, it is either an issue which can be decided as a matter of law that there was a fact issue as to whether or not a tilting motion is vibration. It should be determined by the district court and therefore remanded. Finally, when we were discussing the specification with regard to the controller 180 and the control system 80, I think that when you look back and look at the patent as a whole, when the specification refers to controller 180, we're talking about describing the apparatus, and when the specification refers to the control system 80, it's describing the claim process as a whole. So I think that when you look at the diagram, it's one of the reasons that 80 is sort of set out there as describing this whole claim process. Thank you. Thank you. Case is submitted.